UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ADVANCED ANALYTICAL CONSULTING GROUP, INC.<br><br>                    Plaintiff,<br>v.<br><br>MILLER LAW LLC<br><br>                    Defendant. | Civil Action No.: |

## COMPLAINT

### PARTIES

1. Plaintiff Advanced Analytical Consulting Group, Inc. ("AACG" or "Plaintiff") is a Massachusetts corporation with a principal place of business located at 211 Congress Street in Boston, Massachusetts.

2. Defendant Miller Law LLC ("Miller Law" or "Defendant") is an Illinois limited liability corporation with a principal place of business located at 115 S. LaSalle Street, Suite 2910, Chicago, Illinois. Miller Law is a law firm operated by its principal attorney, Marvin Miller ("Miller").

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over all claims pursuant to 28 U.S.C. §1332, as there is complete diversity between the parties and the amount in controversy is greater than $75,000, exclusive of interest and costs.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to AACG's claims occurred in this

district. Venue is also proper in this district pursuant to 28 U.S.C. §1391(b) since Miller Law is subject to personal jurisdiction in this district because (a) Miller Law has by contract submitted to this Court's jurisdiction and (b) in any event, AACG's claims arise directly out of Miller Law's contacts with AACG in this district.

## FACTS

5. AACG specializes in economic, statistical and computer consulting for business decisions and litigation. AACG's main office is located in Boston, Massachusetts, and it has provided services nationally and internationally from three locations, Boston, Arlington, Virginia, and Los Angeles, California. AACG provides strategic and operational advice to clients, and is retained to, among other things, identify and provide expert services.

6. Miller Law is a law firm, headed by Miller, whose practice involves complex litigation in such areas as antitrust, commodities, consumer protection and securities. Miller Law practices in federal and state courts across the country.

7. Miller Law entered into a written agreement with AACG ("Polyurethane Agreement"), dated July 13, 2011, whereby AACG agreed to provide Miller Law with consulting and research in connection with In Re: Polyurethane Foam Antitrust Litigation, No. 3:11-cv-01055 (N.D. Ohio) ("Polyurethane Litigation"). The Polyurethane Agreement provided that AACG's employee, Russell Lamb ("Lamb"), would be primarily responsible for AACG's activities under the Agreement and that he would be prepared to testify as to AACG's work as part of the rendering of an expert opinion and expert testimony in the Polyurethane Litigation.

8. Miller Law also entered into a written agreement with AACG ("Potash Agreement"), dated September 14, 2012, whereby AACG agreed to provide Miller Law with consulting and research in connection with In Re: Potash Antitrust Litigation (II), No. 08-CV-

6910 (N.D. Ill.) ("Potash Litigation"). Like the Polyurethane Agreement, the Potash Agreement provides that Lamb would be primarily responsible for AACG's activities under the Agreement and that he would be prepared to testify as to AACG's work as part of the rendering of an expert opinion and expert testimony in the Potash Litigation.

9. Both the Polyurethane and Potash Agreements provides that AACG would bill Miller Law for the work of its employees on an hourly basis (setting hourly billing rates for each level of AACG employees who would provide work under the Agreements) and that engagement-related expenses would be billed in addition to the hourly fees. Both Agreements contemplate that AACG's invoices would be issued on a regular basis. They expressly state that AACG's fees and expenses "…not contingent upon the final resolution of the matters that are the subject of this Engagement" and that AACG must be paid in full for all work performed prior to the issuance of any report or the provision of any testimony under the Agreements. The "General Business Terms" appendix, attached to and incorporated in the Agreements, also provides that AACG could terminate its services if payment is not received within a specified period, under the Polyurethane Agreement within 120 days of invoice date and in the case of the Potash Agreement within 90 days of invoice date. The Potash Agreement additionally contractually obligated Miller Law to pay a late charge (after 90 days) of the lesser of 1½% per month or the highest rate allowable by law, compounded monthly.

10. Both Agreements, in the General Business Terms appendix, permitted termination by either party upon written notice, but required that Miller law pay AACG for its services performed and expenses incurred through the effective date of termination.

11. The General Business Terms of both Agreements provided that those Agreements "shall be governed by, and construed in accordance with, the laws of the State of

Massachusetts..." and, with respect to jurisdiction, stated that any action arising under or relating to the Agreements "may only be brought in any court of the State of Massachusetts or any federal court of the United States, in each case located in Suffolk County, the State of Massachusetts."

12. AACG, through its employees, proceeded to perform services for Miller Law under the terms of the Polyurethane Agreement and duly and regularly (in months in which work was performed) issued 30 day net invoices from its main office in Boston to Miller Law from May, 2011 to September, 2012, which Miller Law paid. After September, 2012, AACG issued three additional 30 day net invoices from its main office in Boston to Miller Law for work performed:

    (a) Invoice No. PFI10112012 (dated October 10, 2012, with a due day of November 9, 2012) for $130,927.00 for work performed from August 5, 2012 through September 29, 2012;

    (b) Invoice No. PFI11302012 (dated November 30, 2012 with a due date of December 30, 2012) for $24,301.50, for work performed from September 30, 2012 through October 31, 2012; and

    (c) Invoice No. PFI01242013 (dated January 24, 2013 with a due date of February 23, 2013) for $94,019.17, for work performed from November 1, 2012 through January 19, 2013.

The total billings due under these three invoices is $249,247.67.

13. AACG, through its employees, also proceeded to perform services for Miller Law under the terms of the Potash Agreement and duly and regularly (in months in which work was performed) issued 30 day net invoices from its main office in Boston to Miller Law. The first such invoice, issued in October, 2012, was paid by Miller Law. After October, 2012, AACG issued two additional 30 day net invoices from its main office in Boston to Miller Law for work performed:

    (a) Invoice No. POT11152012 (dated November 15, 2012, with a due day of December 15, 2012) for $58,030.00, for work performed from September 30, 2012 through November 15, 2012 (of which Miller Law paid $5000, leaving a balance due of $53,020.00; and

    (b) Invoice No. POT01252013 (dated January 25, 2013 with a due date of February 24, 2013) for $146,713.75, for work performed from November 4, 2012 through January 18, 2013.

The total unpaid billings due under these two invoices is $199,733.75.

14. On January 22, 2013, Lamb and the other AACG employees who provided services to Miller Law under the Polyurethane and Potash Agreements resigned their employment at AACG. By letter dated January 29, 2013 addressed to AACG at its main office in Boston, Miller, on behalf of Miller Law, informed AACG that the firm had retained Lamb to continue the ongoing work under the Polyurethane and Potash Agreements.

15. AACG sent statements requesting payment of the outstanding invoices under both the Polyurethane and Potash Agreements on February 28, 2013, July 6, 2013, July 31, 2013, August 31, 2013, and September 26, 2013. By letters dated August 19, 2013, AACG sent certified letters to Miller Law requesting payment of those invoices. All statements and letters referenced in this paragraph were sent to Miller Law from AACG's main office in Boston.

16. Miller Law has never questioned the accuracy of the time or expenses billed under the invoices mentioned above. Despite this, Miller Law has failed and refused to pay those invoices, as evidence, <u>inter alia</u>, by letters sent by Miller Law to AACG at its main office in Boston in September, 2013.

## CAUSES OF ACTION

### COUNT I
**(Breach of Contract – the Polyurethane Agreement)**

17. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs, which are specifically incorporated herein.

18. AACG is a party to a contract with Miller Law, the Polyurethane Agreement. Pursuant to that contract, AACG performed services for which it was entitled to receive as payment the amounts set forth in Invoices No. PFI10112012, PFI11302013 and PFI01242013, described above plus statutory interest from the date of Miller Law's breach of the Agreement.

19. By failing to pay the amounts due as set forth above, Miller Law breached the Polyurethane Agreement with AACG, causing AACG substantial financial harm and loss.

20. As a result, AACG is entitled to judgment against Miller Law for breach of the Polyurethane Agreement in the amount of $249,247.67, plus statutory interest from the date of breach.

## COUNT II
### (Breach of Contract – the Potash Agreement)

21. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs, which are specifically incorporated herein.

22. AACG is a party to a contract with Miller Law, the Potash Agreement. Pursuant to that contract, AACG performed services for which it was entitled to receive as payment the amounts set forth in Invoices No. POT11152012 and POT01252013, described above plus interest under the Agreement of 18% per annum accruing and compounding monthly from 90 days after the date of each unpaid invoice.

23. By failing to pay the amounts due as set forth above, Miller Law breached the Potash Agreement with AACG, causing AACG substantial financial harm and loss.

24. As a result, AACG is entitled to judgment against Miller Law for breach of the Potash Agreement in the amount of $199,733.75, plus statutory interest from the date of breach.

## COUNT III
### (Breach of Covenant of Good Faith and Fair Dealing)

25. Plaintiff repeats and realleges the allegations contained in the foregoing paragraphs, which are specifically incorporated herein.

26. AACG is a party to contracts with Miller Law, the Polyurethane and Potash Agreements. Pursuant to those contracts, AACG performed services for which it was entitled to receive as payment the amounts set forth above.

27. In every Massachusetts contract there is an implied covenant of good faith and fair dealing.

28. Miller Law owed AACG an implied duty to act in good faith and deal fairly under the Agreements mentioned above.

29. By failing, without good cause, to pay the amounts due under the Polyurethane and Potash Agreements for more than a year after such amounts were due and payable, Miller Law violated this obligation of good faith and fair dealing, resulting in substantial harm and damage to AACG.

30. As a result of the breach of the covenant of good faith and fair dealing of Miller Law, it is liable to AACG in an amount to be determined by the Court, plus interest, costs and attorneys' fees.

## COUNT IV
### (Quantum Meruit)

31. Plaintiff repeats and realleges each of the preceding allegations as if fully set forth herein.

32. Miller Law has received the benefit of AACG providing services to Miller Law but has failed to pay the fair and reasonable value of those services.

33. Miller Law was fully aware of AACG's provision of those services and of the value that AACG was providing.

34. It is inequitable for Miller Law to retain the benefit of such services provided to it by AACG without making full payment for the services.

35. As a result of the foregoing, Miller Law is liable to AACG for the fair and reasonable value of the services which AACG has provided to it, or by virtue of their illegal and improper use of benefits of those services, in an amount to be determined by the Court, plus interest, costs and attorneys' fees.

WHEREFORE, the Plaintiff Advanced Analytical Consulting Group, Inc. demands judgment against Miller Law LLC:

1. For damages it has suffered as set forth in Counts I through IV above;

2. For interest, costs and attorneys fees as set forth in Counts I through IV above; and

3. For such other and further relief as is just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues triable by a jury.

ADVANCED ANALYTICAL CONSULTING GROUP, INC.,

By its attorneys,

/s/ Janet Steckel Lundberg
Paul Holtzman (BBO#653184)
pholtzman@kb-law.com
Janet Steckel Lundberg (BBO# 545623)
jlundberg@kb-law.com
KROKIDAS & BLUESTEIN LLP
600 Atlantic Avenue
Boston, MA  02210
(617) 482-7211

Dated:  October 22, 2013

2524\0002\348454.3